IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CECELIA EDWARDS | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  06-5520 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                                                              SEPTEMBER 17, 2007

      Before the court for consideration is plaintiff's brief and statement of issues in support of request for review (Doc. No. 9) and the response and reply thereto (Docs. No. 10; 12).  The court makes the following findings and conclusions:

      1.      On March 10, 2004, Cecelia Edwards ("Edwards") protectively filed for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, alleging an onset date of August 4, 2003.  (Tr. 57-60).  Throughout the administrative process, including an administrative hearing held on March 31, 2006 before an ALJ, Edwards' claims were denied.  (Tr. 11-13; 21-34; 41; 43-47).  Pursuant to 42 U.S.C. § 405(g), on December 21, 2006, Edwards filed her complaint in this court seeking review of that decision.

      2.      In her decision, the ALJ concluded that Edwards had a severe combination of impairments consisting of depression, borderline intellectual functioning, and a history of cocaine abuse. (Tr. 27 ¶ 3; 27 Finding 2).[1]  The ALJ further concluded that Edwards' combination of impairments did not meet or equal a listing, that she retained the residual functional capacity ("RFC") to perform work at any exertional level that involved only simple instructions, 1 to 2 step tasks, low stress, occasional interaction with co-workers and the general public, and where reading could not be a critical element of the job, and that she was not disabled.  (Tr. 29 ¶ 5; 33 ¶ 4, 27 Finding 3; 30 Finding 4; 34 Finding 10).

      3.      The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  It is more than a mere scintilla but may be less than a preponderance.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

---

[1] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

4.      Edwards raises numerous arguments in which she alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

A.      Edwards claims that the case should be remanded due to new evidence which was not previously submitted to the ALJ.[2] When a claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner, but only if: (1) the evidence is "new and not merely cumulative of what is already in the record" and (2) material; and (3) the claimant shows that there was good cause for not previously presenting the evidence to the ALJ. Szubak v. Sec. of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984); 42 U.S.C. § 405(g); Fisher v. Massanari, 28 Fed. Appx. 158, 159 (3d Cir. 2002) (citing Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001)). The Supreme Court stated that a sixth sentence remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Where the allegedly new and material evidence was in existence before the ALJ's decision, remanding a case pursuant to sentence six would "eliminate plaintiff's responsibility to present her case for disability before the Secretary" and fail to serve the principle that new evidence remands "should be narrowly circumscribed" "to facilitate the speedy disposition of meritorious claims." Alper v. Shalala, No. 94-5972, 1995 WL 141929, at *2 (E.D. Pa. Mar. 27, 1995).

The records in question consist of school attendance records from 1980 to 1984, report cards from 1981-1982 and 1984, results from the California Achievement Tests in 1974-76, 1978, and 1980, a summary of Edwards' school records, and a discipline report from 1982. (Tr. 230-250). Edwards argues that since these records note that she was enrolled in educable mentally retarded classes from 6th grade onwards, these records clarify the conflicting record in that regard and could possibly have changed the outcome of the decision. (Tr. 243). However, the records from the 1970s and 1980s clearly are not new evidence, since they were already in existence at the time of the decision and there is no showing that they were not available upon request before the hearing. Edwards also asserts that there was good cause for not submitting these records to the ALJ because the ALJ told Edwards' attorney he could try to get the records but she was going to proceed with the case since there had been no diagnosis of mental retardation and the one set of IQ scores was said to have been affected by emotional factors. (Tr. 102-08; Id). Since the listing for mental retardation requires a showing of "deficits in adaptive functioning initially manifested . . . before age 22," Edwards' attorney was on notice before the hearing that such a showing would be necessary to prove Edwards met listing 12.05 and presenting such evidence was part of his affirmative duty. 20 C.F.R. § 416.1540; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, remanding this case for these records would merely serve to "eliminate plaintiff's responsibility to present her case for disability before the Secretary."[3] Alper, No. 94-5972,

---

[2]Although Edwards makes this argument in the alternative, since she references the relevant evidence in her other arguments, the court addresses this argument first.

[3]As for Edwards' arguments that the ALJ's decision one month after the hearing did not allow sufficient time for Edwards' attorney to obtain the records and that the ALJ failed to adequately develop the record in this regard, they also fail. As 20 C.F.R. § 416.912(a) clearly provides, it is the plaintiff's burden to prove disability, meaning the plaintiff "must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)." As noted *supra*, Edwards attorney had an affirmative duty to present evidence of onset before age 22 and should have known that would be necessary before the hearing. Although the ALJ does clearly

1995 WL 141929, at *2. I conclude that the evidence was not new and good cause has not been shown. Thus, the court does not reach the issue of whether or not the records could have been material. However, the court notes that the ME stated he might change his opinion if there were records showing that Edwards was enrolled in special education AND had a valid IQ test, which these records do not provide. (Tr. 279).

            B.     Edwards claims that the ALJ erred by rejecting the report of her treating psychiatrist that Edwards had constant deficiencies in concentration and repeated episodes of deterioration. I first note that a treating physician is only provided controlling weight when his or her opinion is well supported by medically acceptable sources and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429). In the checklist assessment filled out by Edwards' therapist and signed by Susana Wrabel, M.D. ("Dr. Wrabel"), it was noted that Edwards had a "slight" restriction in activities of daily living, "moderate" difficulty in maintaining social functioning, "constant" deficiencies in concentration, persistence, or pace, and "repeated" episodes of deterioration. (Tr. 225). The record reflects that a doctor at the same treatment center as the treating psychiatrist had found Edwards' concentration to be intact and her treating therapist noted throughout the course of the treatment that she had a logical thought process and was insightful. (Tr. 127; 128; 129; 130; 131; 132; 133; 134; 158; 191; 193; 194; 195; 196; 197; 198; 199; 200; 212; 215; 217). The ALJ noted, *inter alia*, that the "constant" and "repeated" assessments were inconsistent with the assessed GAF scores, Edwards' non-compliance with treatment and medication, the negative effects Edwards suffered when she was not taking her medications, the findings of the State agency psychologist, and the findings of the independent medical expert. (Tr. 29 ¶¶ 1-3, 5-6). GAF scores have been repeatedly recognized by courts in the Eastern District of Pennsylvania as constituting medical evidence. See Dougherty v. Barnhart, No. 05-5383, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug. 21, 2006). Through the course of her treatment reflected in the record from January 26, 2004 until March 28, 2006, Edwards was assessed GAF scores primarily in the range of 55-65, with one assessed GAF score of 46 and one of 50, when Edwards was not taking her medications. (Tr. 139; 154; 158; 174; 201; 203; 206; 222). Thus, as the ALJ observed, the assessed GAF scores primarily indicate a moderate to mild impairment, including the GAF score of 55 assessed by the therapist and/or Dr. Wrabel on the form that contained the "constant" and "repeated" findings. (Tr. 29 ¶¶ 1, 6; 222-25). Edwards reported to her therapist that she got a crawling sensation two of the times she stopped taking her medication that she never reported when she was taking her medication, and Edwards testified that her medication sometimes calmed and relaxed her and made it so she had fewer auditory hallucinations, which demonstrates that there was improvement with regard to at least some symptoms when she was compliant with the medication, as the ALJ noted.

---

have a duty to develop the record, her actions in this regard did not violate that duty and do not rise to the level of bias and prejudice discussed in the case cited to by Edwards for support of this argument. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Edwards also asserts that Dr. Rubin should have been recontacted. The Social Security Administration has stated, "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1). That is not the situation here since Dr. Rubin stated Edwards' IQ scores were "not representative of her full intellectual capacity" and did not even list mental retardation as a rule out diagnosis. (Tr. 102-08).

(Tr. 29 ¶ 6; 194; 215; 263). The court observes that 20 C.F.R. § 416.930(b) provides that if a claimant does not follow the prescribed treatment without a good reason, the person will not be found disabled.[4] Additionally, as the ALJ noted, the State agency psychologist determined, after reviewing the available record and observing Edwards had no psychiatric hospitalization, that although Edwards' IQ scores were in the mildly mentally retarded range, her potential and GAF scores were higher, that she had moderate difficulties in maintaining concentration, and had had one or two episodes of decompensation, and that she did not meet any of the listings. (Tr. 29 ¶ 2; 113; 119; 121). As referenced by the ALJ, the ME found that Edwards had moderate difficulties in maintaining concentration and no episodes of decompensation. (Tr. 29 ¶ 5; 278). Thus, the ALJ's decision to discount Dr. Wrabel's findings is supported by substantial evidence.[5]

   C. Edwards argues that the ALJ erred in failing to consider whether the combination of her impairments met or equaled listing 12.04 or 12.05. Generally, an ALJ must analyze the cumulative effect of all of a claimant's impairments in determining whether she is capable of performing work or is disabled. 20 C.F.R. § 416.923.

   As for listing 12.04, noting Edwards's ability to function and lack of psychiatric hospitalization, both the state agency psychologist and the ME determined that Edwards' impairments did not meet or equal listing 12.04, which requires marked restrictions and/or repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. They reasoned that her difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, or pace were no more than moderate and Edwards did not have more than one or two episodes of decompensation. (Tr. 112-22; 277-78). Edwards alleges that the ME failed to take Edwards' limited intelligence into account when considering listing 12.04. However, there is no reason to believe this allegation is true since the ME discussed Edwards' intellectual functioning and, in the very next sentence, testified regarding how her impairments would fit within the purview of 12.04. (Tr. 276-77). Edwards alleges the ALJ relied far too heavily on the GAF scores in concluding Edwards did not meet listing 12.04, however, the ALJ clearly acknowledged that the GAF scores had "no direct bearing on mental impairment evaluation under Social Security disability evaluation criteria." (Tr. 28 ¶ 3). The ALJ stated changes in GAF scores are useful in that they may reflect progress or lack thereof in mental health treatment. (Id). The ALJ clearly relied on far more than the GAF scores in determining Edwards did not meet 12.04. (Tr. 28 ¶ 1- 29 ¶ 5).

   With regard to listing 12.05, since Edwards does not fit the requirements

---

[4] When questioned by Edwards' attorney, the ME testified that even if Edwards had continuous deficiencies in her concentration, that would not explain Edwards' lack of compliance. (Tr. 289). In fact, the ME noted that Edwards was one of the least compliant patients he had seen. (Id).

[5] Edwards alleges that the ALJ should have recontacted Dr. Wrabel. The Social Security Administration has stated, "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1). Since these issues did not arise with Dr. Wrabel, the ALJ was not obligated to recontact her.

for A, she would need to have a valid verbal, performance, or full scale IQ of either 59 or less or 60 through 70.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6) provides that the IQ assessment should be accompanied by a narrative report that relates "whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  On June 24, 2004, Beth Rubin, Psy.D. ("Dr. Rubin") conducted a one time examination on Edwards, where she determined that Edwards had a full scale IQ score of 57, a verbal IQ score of 58, and a performance IQ score of 64.  (Tr. 102-08).  In her narrative, Dr. Rubin noted that she had the impression that Edwards had "greater intellectual capacity, which [was] not being utilized because of the severity of her emotional disturbance."  (Tr. 105).  Dr. Rubin thought it was likely that Edwards had skills within the higher ranges of mildly mentally retarded and borderline and that although these scores were a "valid estimate of her general level of functioning in daily activity," the scores were "not representative of her full intellectual capacity."  (Id).  Dr. Rubin did not diagnose Edwards with mental retardation, make any assessment of Edwards' mental limitations before age 22, or note that further testing should be done to rule mental retardation out.  (Tr. 107).  The court notes at the time of Dr. Rubin's examination, Edwards had not been taking her medications for a month.  (Tr. 135).  The ME confirmed that emotional factors such as being distracted, depressed, or not concentrating will affect IQ scores.  (Tr. 280).  On July 13 and 14, 2004, the state agency psychologist reviewed the record, including Dr. Rubin's findings, noted Edwards appeared to have a higher potential and GAF scores than was reflected by her IQ scores, and determined her impairments did not meet or equal listings 12.04 or 12.05.  (Tr. 109-22; 125).  Additionally, the ME noted that Edwards had emotional problems during the IQ assessment and her functioning was at a higher level than would be reflected by those scores, so he determined Edwards had borderline intellectual functioning and did not meet 12.05.  (Tr. 276-77).  Edwards cites to the Third Circuit opinion in Markle v. Barnhart as precedentially supportive of her arguments based upon "quite similar facts." (Plaintiff's Brief at 9-10).  This case is distinguished from Markle in that the doctor in Markle who conducted the IQ assessment did not qualify the scores in any way and the ALJ in Markle did not have an expert who had reviewed the report and IQ scores.  324 F.3d 182, 187 (3d Cir. 2003).  The State agency psychologist and the ME relied on Dr. Rubin's qualifying comments, including the fact she did not include mental retardation as a rule out diagnosis.  (Tr. 112-26; 275-83; 289-90).  Because of this medical evidence and non-compliance in addition to her ability to perform daily activities, unlike Markle, the validity of Edwards' IQ scores were rejected by medical experts as a result of substantial medical evidence to the contrary.  As the ALJ observed, she was not provided with any evidence that demonstrated or supported onset of mental retardation before age 22, without which listing 12.05 cannot be met.  Id. at § 12.05; (Tr. 29 ¶ 4).

        Edwards asserts that only Dr. Rubin took both Edwards's low intelligence and her emotional impairments into consideration when making her assessment.  The court does not find this allegation to be true since both the state agency psychologist and the ME discussed her depressive disorder and her intellectual functioning in reaching their conclusions.  (Tr. 112-26; 275-83; 289-90).  Both of these doctors noted Edwards' non-compliance with her medications, of which Dr. Rubin did not indicate she was aware.  (102; 122; 278; 289-90).  Most importantly, I note the determination of whether or not a claimant meets a listing is reserved for the ALJ.  20 C.F.R. § 416.927(e).  In concluding that the combination of Edwards impairments "did not meet or equal in severity" any of the listings, the ALJ discussed both Edwards' depressive disorder and her intellectual functioning.  (Tr. 28 ¶ 1- 29 ¶ 5).  Thus, Edwards' argument, in this regard, fails.

    D. Edwards argues that the ALJ erred in rejecting her credible testimony. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)). Moreover, such determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). Pursuant to the regulations, the ALJ uses a two pronged analysis to make a credibility determination. See 20 C.F.R. § 416.929. The ALJ must first determine if there is an underlying medically determinable impairment that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. § 416.929(c)(1). If the ALJ finds that such an underlying condition exists, the ALJ must then decide to what extent the symptoms actually limit the claimant's ability to work. See Id.

    The ALJ determined that Edwards' medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, the ALJ found that Edwards' statements regarding the intensity, duration, and limiting effects of her symptoms were not entirely credible. (Tr. 31 ¶ 2). Edwards argues that the ALJ second-guessed Edwards' treatment plan and substituted her own judgment for that of her doctors by mentioning that her treatment has been conservative and she has not required hospitalization. (Tr. 32 ¶ 2). In fact, 20 C.F.R. § 416.929(c)(3) provides that treatment, *inter alia*, is "an important indicator of the intensity and persistence of your symptoms." As for Edwards' non-compliance with her treatment and medication, as the ALJ discovered at the hearing, Edwards could walk to get her treatment and her medication and testified she walks or uses public transportation to go shopping, go to the market, and go to church, although she sometimes got a ride from a neighbor to church. (Tr. 258; 259; 264; 265). The ALJ also relied on the ME's finding that Edwards was not making the effort to follow her doctors' orders. (Tr. 32 ¶ 3; 289-90). As for plaintiff's contention that the ALJ discounted Edwards' reported side effects (that were only recorded one time in her two years of treatment), I find that the ALJ did not make speculative inferences, but, instead, relied on the testimony of the ME (1) regarding the likelihood that the medication she was taking would cause those side effects, (2) the fact that doctors normally change medications that are causing side effects, and (3) that it is very important for doctors to record side effects of medication. (Tr. 32 ¶ 5; 224; 281-82). Edwards testified that she was able to go back to work after her mom died, "because I had to get my life back. I just had to get myself together." (Tr. 261). Since Edwards was not able to point to any explanation for why she could go back to work after her mother's death, but not her son's, it was permissible for the ALJ to factor that discrepancy into her evaluation along with testimony from the medical expert regarding the average length of bereavement. (Tr. 32 ¶ 5). I also note that the state agency psychologist determined that Edwards had a number of credibility issues. (Tr. 125). Thus, substantial evidence supports the ALJ's finding that Edwards was only partially credible.

    5. Because the decision of the ALJ was supported by substantial evidence and is legally sufficient, the decision of the Commissioner must be affirmed.

  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CECELIA EDWARDS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-5520 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**ORDER**

AND NOW, this 17th day of September, 2007, upon consideration of the brief in support of review filed by plaintiff and the response and reply thereto (Doc. Nos. 9, 10, and 12) and having found after careful and independent consideration that the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law, for the reasons set forth in the memorandum above, it is hereby **ORDERED** that:

1. **JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANT, AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** and the relief sought by Plaintiff is **DENIED**; and

2. The Clerk of Court is hereby directed to mark this case closed.

S/Lowell A. Reed, Jr.
LOWELL A. REED, JR., Sr. J.